IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| JAMES MELVIN, | § | |
| *Plaintiff.* | § § § | |
| v. | § | CIVIL ACTION NO. 5:22-CV-1323-JKP-ESC |
| HOBBY LOBBY STORES, INC. | § § § | |
| *Defendant.* | § § | |

## PLAINTIFF'S FIRST AMENDED COMPLAINT

**TO THE HONORABLE JUDGE OF SAID COURT:**

COMES NOW JAMES MELVIN (hereinafter called "Plaintiff" or "MELVIN") complaining of Defendant HOBBY LOBBY STORES, INC. (hereinafter called "Defendant HOBBY LOBBY") and for a cause of action would respectfully show the Court as follows:

### INTRODUCTION

1. Plaintiff brings this First Amended Complaint to vindicate his federal and state statutory and common law rights.

2. Plaintiff alleges that Defendant HOBBY LOBBY conducted acts of discrimination and retaliation against him.

### JURISDICTION & VENUE

3. This Honorable Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343, and 1345. This action is authorized and instituted pursuant to Section 706(f)(1) and (3) of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-5(f)(1) and (3) ("Title VII") and Section 102 of the Civil Rights Act of 1991, and 42 U.S.C. § 1981a.

4. The Court has jurisdiction over Plaintiff's claims of violations of the Texas Commission on Human Rights Act of 1983 (TCHRA), *as amended*, TEXAS LABOR CODE § 21.001, *et seq.*, which Act's purpose is to secure to those within the state freedom from discrimination and retaliation in

1

employment, pursuant to its supplemental jurisdiction to hear related state law claims.

5. The state claims alleged herein arose from a common nucleus of operative fact, are related to the federal claims such that they form part of the same case or controversy, and the actions would ordinarily be expected to be tried in one judicial proceeding.

6. The employment practices alleged to be unlawful were committed within the jurisdiction of the United States District Court for the Western District of Texas, San Antonio Division.

## PROCEDURAL REQUIREMENTS

7. Plaintiff has satisfied all procedural requirements prior to commencing this action. Mr. Melvin timely filed his complaint of discrimination and retaliation with the Equal Employment Opportunity Commission ("EEOC"), has received a right to sue letter, and has timely brought this claim.

8. This action was filed on November 9, 2022. Defendant HOBBY LOBBY was served with process on November 17, 2022, it filed its Original Answer on December 7, 2022, and thereafter filed its Notice of Removal on December 12, 2022 based upon diversity jurisdiction.

## PARTIES

9. Plaintiff is an African American male (hereinafter "Plaintiff") and was at all times relevant hereto a resident of the State of Texas, County of Bexar, and an employee of Defendant HOBBY LOBBY from approximately July 14, 2020 to August 30, 2021.

10. Defendant HOBBY LOBBY is an Oklahoma corporation whose principal place of business is located in Oklahoma City, Oklahoma and who is authorized to conduct business in the State of Texas. Defendant HOBBY LOBBY has continuously been and is now doing business in the state of Texas and the City of San Antonio, and has continuously had at least fifteen employees.

11. At all relevant times, Defendant HOBBY LOBBY has continuously been an employer engaged in an industry affecting commerce under Sections 701(b), (g), and (h) of Title VII, 42 U.S.C. § 2000e-(b), (g), and (h) and an employer within the meaning of the Texas Commission on Human Rights

Act of 1983, TEXAS LABOR CODE § 21.002(8).

**BRIEF FACTS**

12. At the time of his hire, Plaintiff worked as a part-time Customer Service Manager ("CSM") at Defendant HOBBY LOBBY's location at the Rim in northwestern San Antonio, Bexar County, Texas.

13. As a part-time CSM, Melvin understood his primary job duties and responsibilities to include resolving customer service issues at the point-of-sale, handling cashier breaks, closing down cash registers, overseeing the money bags, answering questions or issues of cashiers while processing payments, handling refunds and discounts, and answering customer questions in person and by answering all incoming telephone calls. Melvin understood there to be a separate store departmental hierarchy that oversaw the stocking and janitorial work, which was outside his scope.

14. After several months of working at HOBBY LOBBY as a part-time CSM, Melvin was suddenly singled out and asked to perform tasks that he understood other CSMs to not be asked to perform. For instance, he would be asked to go outside and collect carts and clean them, to use a blade from a box cutter to peel stickers off the floor, and to vacuum. While Melvin maintained a good attitude and respectfully accepted any assignment given to him, these tasks diverted his attention from his actual responsibilities and the job he was hired to perform. He also observed that he was the only CSM who he believed was asked to perform these tasks; Melvin believed that he was being singled out on the basis of his race. Accordingly, Melvin reported his concerns about his assignments and being singled out to perform menial tasks that other similarly-situated CSMs were not asked to perform to HOBBY LOBBY's Store Manager, who thanked him for bringing these issues to his attention and assured Melvin that he would handle them.

15. For a short period of time after reporting his concerns to the Store Manager, Melvin was not asked to perform tasks that understood to be outside the scope of his work. But, by December 2020, Melvin was told that he was being demoted in January 2021 to a cashier instead of a CSM. A

framing associate and White male replaced Melvin as CSM. Based upon Melvin's personal observations, he had never seen this new CSM perform any cross-training or work at the cashier's station to prepare for this new position. Melvin again believed that he was being treated differently on the basis of his race and in retaliation for reporting his concerns to management.

16. On January 11, 2021, Melvin wrote a letter to the Store Manager and District Manager to express his disappointment and ask for a formal meeting to discuss Melvin's concerns. During this meeting, Melvin explained that he did not understand his demotion and that he believed that HOBBY LOBBY lacked diversity in its management. Melvin explained that he had traveled to each one of HOBBY LOBBY's stores within this district and could not find any Black managers working in the district. Melvin expressed his concerns with his demotion and questioned his future in the company as a Black man and whether he would have any opportunities to move up.

17. Thirty minutes after the meeting ended, Melvin was suddenly called back into a meeting with HOBBY LOBBY's Store Manager and Co-Manager. Without prompting, the Store Manager told Melvin that HOBBY LOBBY had a policy of terminating employees after they have six "occurrences." At this point, Melvin did not have a single write-up or disciplinary action in his personnel file and had never had any "occurrences" while working for HOBBY LOBBY. When Melvin asked why he was being told this after the meeting with the District Manager, he was told that HOBBY LOBBY did not want to be in a position at which he had too many "occurrences" and he needed to be "let go." Melvin understood this to be a direct threat based upon his complaints of discrimination and retaliation.

18. Melvin continued working without issue or "occurrences" as a cashier for the following months. One time, when he went outside to collect the carts he was locked out of the building; the Co-Manager was at the door when Melvin asked to be let back in and told Melvin, "Don't you get the hint." Melvin understood this to be a reference to the meeting with the Store Manager and Co-Manager at which he was threatened to be fired if he had too many "occurrences." This affirmed Melvin's belief that he was being pushed to quit – as he noticed that his schedule would be suddenly changed without

4

notification, he would be asked to help the White male who took his position, or that he would be asked again to perform menial tasks that he had already reported to HOBBY LOBBY as being discriminatory.

19. In approximately June 2021, Melvin was told that a CSM position was open and asked if he wanted to take it. Melvin accepted the position and hoped that he was on track to pursue management opportunities at HOBBY LOBBY. But, on August 30, 2021, Melvin was suddenly terminated for a pretextual reason. On Saturday August 28, Melvin reported to the front cashier for his shift to begin as stated on the Daily Assignment Sheet. Another CSM suddenly came to the front and told Melvin that he needed to go clean the restrooms and a stocker would be pulled from the back to cover Melvin's register. Melvin immediately requested to meet with the on-duty manager and expressed to him the issue. He told him he had already met with the District Manager and Store Manager about this issue and that he thought it was "a little prejudiced and a little racist" for him to be assigned to clean the restrooms in light of the prior concerns he raised. The only response given to him was that he needed to "calm down."

20. Melvin told the on-duty manager that he was calm, but that he wanted to go to the Bitters location to speak with the District Manager himself. Significantly, the on-duty manager never told Melvin that he needed to clean the restrooms. He never told him that he could not leave the store to speak with the District Manager. When Melvin learned that the District Manager would not return to work until Monday, Melvin planned to go to meet with him then but never got the chance. On Monday, August 30, Melvin received a telephone call from the Store Manager and was told that he was terminated immediately for insubordination. Melvin never refused to perform an assignment given to him by a supervisor; he had never been warned that his actions constituted insubordination; and he had never received any disciplinary action during the entire time he worked for HOBBY LOBBY. Accordingly, Melvin believes his termination was pretextual and was discriminatory and retaliatory based upon his experience and opposition of HOBBY LOBBY's discriminatory conduct in violation of the Texas Labor Code.

## DISCRIMINATION, RETALIATION, AND UNLAWFUL EMPLOYMENT PRACTICES UNDER TITLE VII AND THE TEXAS COMMISSION ON HUMAN RIGHTS ACT

21. The facts set forth above are incorporated by reference as if fully set forth herein.

22. At all times relevant to this lawsuit, Plaintiff was, on account of his race, Black, a member of a protected class. Defendant treated the Plaintiff less favorably in the terms and conditions of his employment than similarly situated employees because of his race, Black.

23. By complaining to Defendant about discrimination directed against him and at Defendant's locations and by opposing unlawful employment actions directed toward him and other Black employees, Plaintiff engaged in activities protected by the law. Defendant unlawfully retaliated against the Plaintiff for having engaged in protected activities, by eventually terminating his employment.

24. As described above, HOBBY LOBBY intentionally and willfully violated the Texas Commission on Human Rights Act by discriminating and retaliating against Melvin in violation of Section 703(a) of Title VII, 42 U.S.C. § 2000e-2(a), Section 704(a) of Title VII, 42 U.S.C. § 2000e-3(a), and the Texas Labor Code §§ 21.051, 21.055, & 21.125.

25. When HOBBY LOBBY illegally discriminated and retaliated against Melvin, HOBBY LOBBY acted intentionally and/or with malice and/or reckless indifference to the statutory-protected rights of Melvin.

26. As a result of HOBBY LOBBY's violations of Title VII and the TCHRA, Melvin has suffered actual damages in the form of lost wages and benefits (past and future), mental trauma, and other losses.

27. As a result of these willful violations of Title VII and the TCHRA, Melvin requests that he be awarded all compensatory and punitive damages, to which he is entitled.

## DAMAGES

28. **Economic.** The foregoing acts and omissions, whether taken singularly or in any combination, were a proximate and/or producing cause of Plaintiff's damages. These damages include

all legal and equitable relief allowed under state law. As a direct and proximate result of Defendants' conduct described above, Plaintiff has suffered actual and compensatory damages, including back pay, front pay, loss of income, loss of raises, promotions, and fringe benefits.

29. **Mental Anguish.** Furthermore, Plaintiff has suffered past and future mental anguish, within the jurisdictional limits of this Court.

30. **Punitive Damages.** Defendant's conduct was intentional and/or with reckless indifference to Plaintiff's protected rights entitling Plaintiff to compensatory and punitive damages. Plaintiff herein makes a claim for punitive damages.

31. **Attorneys' fees.** Plaintiff seeks recovery of all reasonable and necessary attorneys' fees incurred in the prosecution of this action as allowed by law.

## JURY DEMAND

32. Plaintiff respectfully requests trial by jury of the issues in this case.

**WHEREFORE,** Plaintiff JAMES MELVIN respectfully requests that this Honorable Court cite the Defendant to answer and appear, and upon final trial enter a judgment upon his favor and award the following:

- A. Back pay and benefits;
- B. Reinstatement;
- C. Front pay and benefits, if reinstatement is not feasible;
- D. Compensatory damages;
- E. Costs, including reasonable expert fees;
- F. Attorneys' fees;
- G. Plaintiff's costs;
- H. Prejudgement and post-judgement interest accruing at the maximum rate allowed by law;
- I. Such other and further relief as the Court deems necessary, proper and

equitable, general or specific, to which Plaintiff may show himself to be justly entitled.

Respectfully submitted,

**Espinoza Law Firm, PLLC**
10202 Heritage Blvd.
San Antonio, TX 78216
210.229.1300 t
210.229.1302 f
www.espinozafirm.com

_____
**JAVIER ESPINOZA**
Texas Bar No. 24036534
javier@espinozafirm.com
e-service@espinozafirm.com
**LARA BROCK**
Texas Bar No. 24085872
lara@espinozafirm.com

## CERTIFICATE OF SERVICE

I hereby certify that on this 5th day of January, 2023, a true and correct copy of the foregoing was DELIVERED, MAILED, E-MAILED or FAXED to:

Rebecca A. Magee
Ogletree, Deakins, Nash, Smoak & Stewart, P.C.
112 East Pecan Street, Ste. 2700
San Antonio, TX 78205

_____
**LARA BROCK**